Case number 231966 Bradley Fleming versus Kellogg Company et al. Argument not to exceed 15 minutes per side. Ms. Pathak, you may proceed. Time for an ERISA case, right? It'll be the most fun you've had all day. Let's talk about ERISA. Good morning, your honors. May it please the court, Rada Pathak for Bradley Fleming. This case involves, I'd like to reserve four minutes for rebuttal, your honors. This case involves a mandatory arbitration clause that requires Mr. Fleming to waive his right to participate in a class, collective, or representative action. Mr. Fleming is not challenging the bar on class arbitration or collective arbitration. The bar on representative arbitration, however, constitutes an impermissible prospective waiver of Mr. Fleming's substantive rights. The 1132A, is that, is it A? Yes, A2, your honor. So, express cause of action. It is, your honor. It's a 1132A2 gives a participant a right to bring a cause of action on behalf of the plan to seek the remedies that are enumerated in section 1109, which are plan-wide remedies. Now, the arbitration clause was amended in defendant's own words to avoid invalidation under the effective vindication doctrine, but the amendment didn't remove the bar on representative arbitration and instead added a single proviso that says, notwithstanding the bar on representative arbitration, the arbitrator may award any relief otherwise provided by ERISA. So, what do you think otherwise means there? Well, I think, I think otherwise means for non-representative claims, the arbitrator may award any remedy that's available. But, of course, A2, as this court has acknowledged, and as the Supreme Court has acknowledged, is a representative claim. It's necessarily representative, and I don't think there's any way to escape the conclusion that the arbitration provision removes representative claims from arbitration. So, for non-representative claims, for example, a claim under 1132 A3, those claims could go into arbitration, and the arbitrator would be authorized to award any remedy that's available. You know, the proviso clarifies that even if, for example, a remedy for an A3 claim looks like it goes beyond an individual, the arbitrator has authority to award it. But we're not talking about an A3 claim in this case. We're talking about an A2 claim, and Mr. Fleming can't bring it at all because of the bar on representative, representative claims in arbitration. And so, that's why we have an effective vindication problem. Because, of course, if Mr. Fleming can't assert an A2 claim in arbitration at all, that's an impairment of his substantive rights. So, I did want to ask you about that because his rights in that, in asserting that claim, are just derivative. Isn't that correct? I don't know that I entirely... He's a representative of the plan. Right? He's not saying, hey, wait a minute, you know, I'm getting charged a hundred bucks a month because you overpaid the firm seven million dollars to do whatever it was they were doing. It's just, it's the plan's injury. He's not saying, he doesn't have his own injury as an 1132A plaintiff. Is that right? Respectfully, Your Honor, I... That's why it's representative. Well, so respectfully, Your Honor, I disagree with that a little bit. I think that that's partly right, but partly not right, and here's why. So, certainly, Mr. Fleming is acting on behalf of the plan, and he is asserting and only allowed to assert an injury to the plan. However, he's also required to show that he has a concrete stake in the lawsuit. He, you know, in order to satisfy Article 3 standing, he has to have his own injury as well. Now, his injury flows through the plan. It's, he's going to get an indirect benefit if he's successful in restoring the plan's full losses. And he's indirectly harmed for the injury. Correct. He's indirectly harmed. So, I don't think, though, that that means he's not injured at all. I think he is injured within the meaning of Article 3, and that's important because otherwise he couldn't bring an A2 claim. But, certainly, I agree that his claim is on behalf of the plan, and this court has called A2 claims derivative. But I do think it's important that the plan has a right here, and so does Mr. Fleming. Mr. Fleming is the one who has the ability to bring the claim, and so that's significant. I mean, that's a procedural entitlement. I mean, the relief doesn't go to him directly. That's right, Your Honor. The relief has to, under A2, the remedies that are available in 1109 must go to the plan, which shows that, again, the A2 claim is necessarily representative. And if the bar on representative arbitration is allowed to stand, then Mr. Fleming can't bring the A2 claim in arbitration at all. And, for that reason, the arbitration clause prospectively waives his substantive rights under ERISA. I think, in addition to him not being able to bring the A2 claim at all, of course, the only way to get the remedy is under 1109, and so he has a substantive right to obtain these remedies on behalf of the plan. And I do think it's a substantive right because of what the court said in Viking River v. Moriana, which is that single-agent, single-principle claims are part of the substantive law. And so here we're talking about, I think, Mr. Fleming does have a substantive entitlement to pursue an A2 claim and to obtain plan-wide remedies that are enumerated in 1109. You can only get those by bringing an A2 claim. By making it impossible for him to do that in arbitration, the clause prospectively waives his rights and, as a result, is unenforceable. So can I ask you, this is more of a practical question. So I understand what you're saying, that this language, to just paraphrase your argument, clearly bars him, since this is a representative capacity lawsuit, even though it says the remedies that are otherwise available, this is really going to foreclose him from doing that. I hear Kellogg saying, well, no, send it to arbitration, and the arbitrator has the authority to do this. Do you just not believe them? Do you think that if he goes to arbitration that the arbitrator is then going to say, oh, OK, well, I really can't give you the relief that you're seeking here because this language bars me? Well, Your Honor, I don't think it's a question of not believing them. I think that Kellogg is obligated to write an arbitration provision that's enforceable, and Mr. Fleming can't be made to arbitrate under a clause that's unenforceable because it strips him of his statutory rights. And so it wouldn't be consistent with the effective indication doctrine to have Mr. Fleming go into arbitration. I do think as a practical matter, so I'll pause there and say, so I think it would just be inappropriate to send him to arbitration at all. I do think, though, Your Honor, as a practical matter, that when you have language like this, it would be confusing for an arbitrator. The arbitrator may not understand the scope of his arbitral authority when there's an arbitration clause that says that the arbitration cannot be conducted on a representative basis. So I do think that there's a practical problem there. And, you know, even if my friend were to not go into the arbitration and make arguments about Mr. Fleming's inability to get, for example, full loss restoration, so even if he went to do that, there's a potential for confusion. Certainly, I think that this language does give any opponent the ability to go into arbitration and say, OK, well, plan-wide remedies are not available because look at the arbitration clause. Look what it does. So I think that there's both a doctrinal reason and a practical reason why this court should reverse the district court's holding that the clause is enforceable, despite the bar on representative arbitration. There's also, Your Honor, a second independent reason to reverse here, which is that there's no agreement within the meaning of the Federal Arbitration Act. Mr. Fleming did not have notice of the original arbitration clause, and he had left the plan by the time the arbitration clause was amended. So, you know, on this point, who are the signatories, so to speak, to the arbitration clause or agreement? Well, the plan sponsor usually ends up signing the amendment. Well, who did it here? I mean, so the plan, am I correct in thinking the fiduciaries agree to the arbitration agreement on behalf of the plan? Like they supply the plan's agreement, or am I mistaken on that? I think it's not entirely clear, Your Honor. The fiduciaries are typically involved in drafting the plan terms like the arbitration clause and getting them enacted. Is it in the term of the plan? Is that it? I'm sorry, Your Honor? Is it in the plan? Yes, Your Honor. Yes. And just to be clear, defendants' position is that arbitration can be unilaterally imposed, even when a participant has no notice of it and has left the plan, because the arbitration clause is within the plan. And their position is that as long as an arbitration clause is within an ERISA plan, it's enforceable against everyone, regardless of whether the participant was in the plan, out of the plan, regardless of when the cause of action accrued. That is their position, and that's extreme. And it's not consistent with this Court's holding in Hawkins v. Sintas. What is the agreement here? It's not a contract, it's a plan. But I'll ask your friend when they come up. Your Honor, I think that's precisely our point, is that if you ignore the participant, which is what my friend is asking you to do, if you ignore the participant, then you can't point to the existence of an agreement. All you have is the unilateral imposition of an arbitration provision, and that doesn't work. It also doesn't make sense to ignore the participant for other reasons. I don't think they'd be asking you to ignore the participant, for example, for statute of limitations purposes. And so this is another basis, Your Honor, on which you can reverse the district court. So I see that my time is getting short, so I ask that you reverse, Your Honor. Thank you. All right, Mr. Torres. May it please the Court, my name is Joseph Torres. I represent the defendants in this matter. To start with the question on the merits regarding the language here, we do think that the district court correctly concluded that the remedial provisions in this plan can be read to allow the arbitrator to award any relief permissible under ERISA. And the case law regarding arbitration draws a distinction that the plaintiffs conflate here. It draws a distinction between... Well, we're interpreting this clause. Yes. It's not, you know, one thing I just... People make the mistake of saying clauses of this type are understood as X in insurance contracts all the time. And that's just not... We don't do this in gross. We interpret this provision. Yes, Your Honor. My point is... And this one says any arbitration will be conducted on an individual basis only and not on a class, collective, or representative basis. And then it says, provided, however, that the arbitrator may award any relief otherwise available under ERISA. And I'll just be straight with you. I read otherwise there to mean other than representative stuff and the stuff we just said you cannot do. The arbitrator can grant any relief that's available, in which case they can't get the representative type relief. Well, Your Honor, I guess I would take issue with that only insofar as I was going to say that there are other cases will draw the distinction between whether or not you can have, you're allowed to have individualized arbitration on the one hand, as opposed to as distinct from whether or not the remedies that are available here could be awarded. And we think that... I know what that means. My point is that we think that clause does allow the arbitrator to award whatever relief to the plan Mr. Fleming is able to seek. What does otherwise do in that sense? I think, Your Honor, otherwise can be read as the district court did to say that there is no limit on what remedies the arbitrator can award to a plaintiff or a claimant in an arbitration. That's how... But we can't do the arbitration on a representative basis. Yes, Your Honor, Mr. Fleming has... Mr. Fleming is out of luck in asserting an 1132A claim in the arbitration. Right? I don't agree with that, Your Honor. I believe that Mr. Fleming can seek every type of remedy that he listed in his appellate brief. There's... You know, you can't... Arbitration will be conducted on an individual basis only, not on a representative basis. And that's as clear as it comes. 1132A. You would agree 1132A is a representative claim. 1132A2 is, yes, Your Honor. Sure. So that's representative. And it says here you can't do... You can't proceed on a representative basis. Yes, Your Honor, but I think representative can have more than one meaning. And again, I think it's not... It is not outside the realm of reasonable interpretation to say that if you read the remedial provision that the proviso allows for any relief otherwise allowed under ERISA. We're trying to figure out what the best interpretation is. And when it says individual basis only and not on a class, okay? So Rule 23 is out. Collective, whatever that is, or FLSA or something, or representative basis. I mean, the first two words kind of wipe out pretty much everything except 1132A or other similar representative claims, right? Your Honor, again, insofar as it requires Mr. Fleming to proceed as an individual, I would agree with that. But I also think that the provision, the next provision, the proviso that we've been focused on, gives the arbitrator the ability to award any relief allowable under ERISA. And we think that that can be read as the district court did to permit the type of relief that Mr. Fleming is seeking in this case. We haven't contended otherwise at any point in this litigation that any of the relief that Mr. Fleming has delineated in his appellate brief is not within the authority of the arbitrator to award. And we don't think that under arbitrable principles we should be construing any potential ambiguity. It should be construed in favor of arbitration, not to the court. But how is that ambiguous? I mean, Judge Ketledge has just walked you through. It specifically says class. It specifically says collective. And so you want us to read representative to mean something else. Like, I hear you saying that he can get any remedy that he wants, but he can only bring this 1132A2 claim in a representative capacity. So that if he can't, how can he even bring the claim before an arbitrator? Well, Your Honor, I think the question of whether Mr. Fleming could seek to include other individuals as he's trying to in the lawsuit he filed under Rule 2. Well, isn't an 1132A2 a representative action no matter what? It's a derivative claim, Your Honor, and so it is something that he can bring and he can seek remedies on behalf of the plan. So I don't think, again, that that terminology, representative, is not something that comes out of the statute itself. It's a description of the types of claims that are being brought. And we don't think that that description necessarily precludes or doesn't preclude the second provision that allows for any relief otherwise available under ERISA. But it says he has to be proceeding as an individual. Yes, Your Honor. Which means he can get anything ERISA would entitle him to as an individual himself, not as a representative of the plan, which means the basic remedy he wants here is that the fiduciaries signed off on a $7 million overpayment. They need to make that good. Yes, Your Honor. That's a derivative claim. It's not his claim. Yes, Your Honor. But he can't get that. I disagree with you, Your Honor. I believe Mr. Fleming. As an individual, there's a mismatch between the capacity and the remedy. He doesn't have that harm. He doesn't have a $7 million loss. He has a $100 indirect loss. Yes, Your Honor. As an individual, that's what he can get, right? He can't. He's not harmed $7 million, so he can't get that unless he's in a representative capacity, which it says he can't do. Yes, Your Honor. Just to put the cards on the table. I mean, that's the concern I have with your argument. I understand, Your Honor. And all I'm suggesting to you is that Mr. Fleming, as an individual, can still seek plan-wide relief. And we believe that the provision that we've pointed to – He's entitled to it. Well, but I mean, no one's entitled – and at 50282, no one is going to be entitled to everything that might be sought under plan-wide relief, Your Honor. I mean, it's always going to be the case that when an individual brings a claim under 50282, he's not going to be able to say, I'm entitled to everything I'm seeking in terms of plan-wide relief. That's always the case. Well, anyway. Okay. With respect to the consent argument, Your Honor, two points. One is, you know, we don't believe that this question of whether there's a contract here was properly raised below. But even if it were, plaintiffs themselves can see that this operates like a unilateral contract. It's a private benefit plan. It's established in their brief. They acknowledge that they consent or agree to it by continuing to participate in the plan. So we don't think there's any – even if they had preserved that argument, we don't think there's anything unusual or problematic about there being an agreement by continuing to participate. You take the plan as it is because that's what ERISA allows the plan sponsor to do. You know the law better than I do in this area. Are there – can you give me any, like, circuit cases, for example, that say this kind of provision in a plan with language saying if you're in the plan, you agree to this arbitration agreement or clause. Are there circuit cases that say that constitutes an arbitration agreement for purposes of the, you know, the act? I'm not aware of a Federal Arbitration Act case, Your Honor. There's no case that actually says this is an agreement, this sort of – it's very unusual. Usually in an arbitration case, you know, you have company A, company B, they both signed it, or a consumer company that, you know, they both agreed to it. Here we don't have an agreement. It's just part of a plan. Well, I would say the same thing applies in the consumer contract. People don't agree to arbitrate when they're – the Italian Colors case that the Supreme Court decided involves a consumer contract. There was no agreement. There was no negotiation. There's a nominal agreement. There is. Well, we would say that the agreement to participate in the plan is similar. You can agree to something by accepting the terms and acting thereunder. If Mr. Fleming didn't want to arbitrate or if he didn't want some other provision in the plan, he could choose not to participate in the plan. It's not mandatory that participants give money through a plan, but if they chose to, then one of the conditions is that they're subject to the terms of those plans. The plan has the ability – ERISA has very well established that plan sponsors have the ability to unilaterally amend plans to add whatever provisions they deem appropriate. So what role do the fiduciaries have in crafting or approving plan provisions? So this plan amendment was actually implemented by the company. It was a non-fiduciary act, and so it's not subject to the fiduciary standards. It was the company who decided to amend the plan. They're allowed to do that. It's a settler function. It's not subject to the fiduciary duties standards that are set forth in ERISA. And so the fact that they chose to do that doesn't bring to mind any of the fiduciary concerns that some courts have alluded to in talking about this box-guarding-the-henhouse sort of concept, Your Honor. Who's the fiduciary again here? The fiduciary is a committee, Your Honor, that's appointed to oversee the operation of the plan. The company who has delegated its authority to one of the executives is the actual entity that amended the plan to add the arbitration provision. So it's not as if the fiduciaries are saying, well, we're going to take this step to somehow shield ourselves from liability. They're not the ones that are making that act. So there isn't this concern that somehow they're the ones who are taking a self-interested step, assuming that was even impermissible, to send this to arbitration. And because it's a non-fiduciary act, it doesn't bring into consideration some of these other concerns about self-dealing and such. So we don't think there's any prohibition on doing that. We think it's allowable for plans. ERISA allows plans to be amended retroactively. ERISA allows plans to be amended unilaterally. And everything that happened here is fully in accordance with what ERISA allows plan sponsors such as Kellogg to do. So he agreed to it because he didn't exit the plan after this was put in there? Yes, Your Honor. And again, that's like any other unilateral contract. If you choose to participate, if you choose now to seek relief under the plan, not only on behalf of himself but on behalf of a class of participants, Your Honor, you take the plan as you see it or as you find it. But you don't have any case that says that's actually an effective agreement as to an ERISA plan? I'd say there's numerous ERISA plans that recognize that unilateral amendments are binding on the plan. You have a case that, can you give me authority for the proposition that his failure to exit the plan is effective consent for purposes of a meeting of the minds about this arbitration clause? Your Honor, I believe the Monroe case we cited from the Ninth Circuit makes that point in talking about the effectiveness of consent. What I was going to say is in other ERISA contexts as to whether amendments to plans are binding on participants or whether the institution of a reservation of rights, as an example, Your Honor, allows a plan to eliminate a benefit, that those are all based on this same idea that the participation in the plan constitutes the consent of the participant. It's a unilaterally established plan, so they're not in a position of bilaterally negotiating these provisions because ERISA allows plans to unilaterally amend the provisions as they see fit. And it doesn't require there to be some mutual consent. So as I said, I think the Monroe case speaks to that point. Unless there's any other questions, we would just ask that the district court's dismissal of the case be affirmed. Thank you. So, Your Honors, let me just briefly touch on effective vindication and then further on the consent issue. What about the Monroe case? Do you know that? Just real quick. The Ninth Circuit case that might be authority for this sort of arrangement as being an actual agreement, meeting of the minds? Your Honor, I don't think that the Monroe case stands for the proposition that under the FAA, this is an enforceable arbitration, that a plan provision is necessarily an enforceable arbitration agreement. I do want to back up for one moment, though, to point out, Your Honors, that certainly in the briefs, my friend took the position that participant consent was entirely irrelevant and made no attempt to show that Mr. Fleming had consented. I'm happy to talk about whether or not he consented, but I just did want to make a note of that. We, from the district court briefing on, have been taking the position that you should be paying attention to it, whether or not a participant has consented. That has been an argument that was certainly preserved. One reason that you have to pay attention to participant consent is because if you don't, then you can't find an agreement. If we ignore the participant, then all we have is the plan sponsor unilaterally deciding that it wants to have claims against it and its fiduciaries arbitrated. That's not how the FAA works. So my friend focuses on ERISA and the ability of a plan sponsor to amend the plan unilaterally, but the FAA is what makes arbitration permissible of ERISA claims. We wouldn't have arbitration of ERISA claims if it wasn't for the FAA, and it's the FAA that imposes the agreement requirement, and they can't show the existence of an agreement here. So it's important to note, Your Honor, that Mr. Fleming only had 11 days between when the original arbitration clause was enacted, and it went into effect. He didn't have an opportunity to manifest consent. He had already left the plan by the time the arbitration clause was amended. So I don't think that there's any credible position, and I don't think that Mr. Torres, my friend, has any authority for the proposition that under those circumstances, we have the kind of consent that the FAA requires in order to have an enforceable agreement. So what does the act require then? The agreement, you know, I mean, remind us. So the Federal Arbitration Act only allows for the enforcement of arbitration agreements. There has to be an agreement to arbitrate. It's just that simple. It is just that simple, Your Honor. Well, I mean, it has to be. Eleven day window where, you know, he doesn't sort of exit during that window, right? That's not. He didn't know that he didn't, he doesn't have, we alleged in our complaint, Your Honor, and they've never contested that he had no idea that the original arbitration clause had even been adopted. Is there any evidence in the record that notice of some kind was sent to the plan participants that, hey, we've done this, and you'd better get out in the next ten days? No, Your Honor, they did not submit any evidence that any notice was provided. This was decided at the motion to dismiss stage, and they took the position below that participant consent was irrelevant. Now, they did say that participating in the plan at all constituted consent. They don't make that argument on appeal, but there's no evidence. We allege that there was no notice. We said that Mr. Fleming had no notice. It's their burden to show that there was an agreement here. They didn't do that, and so this is an independent basis to reverse. However, Your Honor, another, you know, you can also decide this case on the basis of effective vindication, and what my friend is suggesting, which is that Mr. Fleming can somehow obtain plan-wide remedies, even though he's arbitrating on a non-representative basis, is just contrary to how A-2 claims work. He's inventing a claim that doesn't exist under ERISA, and so because Mr. Fleming cannot assert claims under 1132 A-2 in arbitration and thus cannot obtain the remedies that are enumerated under 1109, the arbitration clause is unenforceable because it effectuates a permissible prospective waiver of his ERISA rights. Thank you, Your Honor. We urge that you reverse. We appreciate the argument both of you have given, and we'll consider the case carefully.